EDWARD POTTER, as Permanent Receiver of the EMERSON-STEUBEN CORPORATION, Its Stock, Property, etc., *v.* EMERSON-STEUBEN CORPORATION, ISAAC KAUFMAN, SAMUEL KAUFMAN and JACK KAUFMAN, Defendants.

Supreme Court, Special Term, Kings County, March 13, 1937.

*Abraham H. Sarasohn*, for the plaintiff.

*Bogart & Lonergan*, for the defendants.

CONWAY, J.  Plaintiff was appointed permanent receiver of the corporation in the judgment in the action of Zaiden v. Emerson-Steuben Corporation.  That was an action by a judgment creditor for sequestration under section 70 of the General Corporation Law. The judgment in the Zaiden case directed in substance that the assets of the corporation be sequestered " for a just distribution thereof among the fair and honest creditors " as in cases of a " voluntary dissolution " and named plaintiff herein the " permanent receiver " with the usual powers.  The present action is one such a receiver is expressly authorized to bring under section 61 of the General Corporation Law for an accounting by former directors and officers for waste and diversion of assets under section 60 of the General Corporation Law and section 15 of the Stock Corporation Law.  There has been awarded herein judgment that the wasted and diverted assets be " accounted " for and " paid over " to him as " permanent receiver."  Upon such payment over the plaintiff, permanent receiver, will hold the sums received for subsequent distribution, not only to the original judgment creditor, Zaiden, but to and among all creditors in their due proportion.  It is clear that the plaintiff as permanent receiver is not in the limited legal status of a receiver in supplementary proceedings nor of a receiver to receive payment for a judgment creditor as in the various cases cited by defendant such as *Manning* v. *Drapkin* (242 App. Div. 778); *Myers* v. *Becker* (95 N. Y. 486), and *General Electric Co.* v. *Sire* (88 App. Div. 498), but is " an officer of the court " entitled to enforce the judgment by contempt which may be either simultaneously with, or before, or after the issuing of execution,

as the court directs (Civ. Prac. Act, § 505, subd. 4) in the order adjudicating the contempt, and need not, of necessity, be provided for in the judgment as defendants suggest. (*Gildersleeve* v. *Lester*, 68 Hun, 535; more fully reported in 22 N. Y. Supp. 1028; affd., 139 N. Y. 608.) Care should be taken in reading *Gildersleeve* v. *Lester* to avoid the error in citation which occurred in the opinion in *General Electric Co.* v. *Sire* (88 App. Div. 498).

*Gildersleeve* v. *Lester* had two phases, one concerning the merits of the judgment reported at 68 Hun, 532, and the other concerning its enforcibility by contempt proceedings reported at 68 Hun, 535.

The second ground of opposition to the motion is that the demand is insufficient as a foundation for contempt proceedings because made by the attorney for the plaintiff-receiver instead of by the receiver in person. A like contention was formerly often advanced in relation to alimony contempt proceedings. The resulting conflict of decision was terminated by the amendment to section 1773 of the Code of Civil Procedure in 1919 (Laws of 1919, chap. 478) which has been carried into section 1172 of the Civil Practice Act. This provided that " no demand of any kind upon the husband shall be necessary in order that he be proceeded against and punished." There was no similar amendment to the provisions of the Judiciary Law, applying to contempt in other than matrimonial actions, but this may be regarded as a legislative recognition of the fact that under the Judiciary Law, correctly interpreted, no demand *by* the party entitled to payment or performance was necessary. So far as the contention that a personal demand *by* the receiver is required by statute, the phrase " a personal demand thereof has been made " will be found to occur only in section 756 of the Judiciary Law, under which a warrant of commitment for contempt may be issued without notice and does not occur in section 757 where the proceeding is initiated, not by warrant of commitment but by order to show cause or attachment to answer. It may well be that in the first situation of an initiation of proceedings by issuance of a warrant of commitment, a personal demand upon the debtor was properly required in the interests of justice since otherwise he would be without notice that he was to be charged in contempt. In the other two situations, *i. e.*, of order to show cause or attachment to answer, they would in themselves give notice to the debtor and thus there would be no need of prior demand. Even under section 756, the phrase " a personal demand " could as well be interpreted as meaning a personal demand *upon* the debtor as a personal demand *by* the creditor. This seems more in accord with the idea of some fair notice to the debtor before he is held in contempt. In *Lorton* v. *Seaman* (9 Paige Ch. 609) such was the interpretation, which was followed in *Gray* v. *Cook* (24 How. Pr. 432); *Matter of*

*Ockershause* (59 Hun, 200); *Ryckman* v. *Ryckman* (32 id. 193); *Union Trust Co.* v. *Gage* (6 Dem. 358) and *Bradbury* v. *Bliss* (23 App. Div. 606). If that is the correct interpretation of " a personal demand " it at once disposes of the contention that it must be by a party personally, even if it be assumed that the phrase " a personal demand " in section 756 of the Judiciary Law is to be implied into section 757 of the Judiciary Law. However, the implication is not warranted by anything in that section, for it only adopts or assimilates the substantive reference in section 756 to (1) neglect or refusal to pay costs, and (2) neglect or refusal to pay a specified sum adjudged to be due without adoption or assimilation of the procedural requirement in section 756 of a precedent demand. There can be found no binding authority in this department, other than in the old matrimonial cases, to the effect that a demand *by* a creditor in person, and not in the person of his attorney, is necessary whether the proceeding is one begun by warrant of commitment or by order to show cause or by attachment to answer. There are four cases cited by defendants. In two of them (*Matter of Amy*, 116 Misc. 48, and *Matter of Flynn*, 137 id. 900), both in Surrogate's Court, the propriety and sufficiency of a demand by the attorney in the original proceeding was upheld. The third case cited (*McComb* v. *Weaver*, 11 Hun, 271) arose in the Third Department and did not reach the Court of Appeals. The fourth case (*Sutton* v. *Sutton*, 145 App. Div. 845, First Dept.) was an alimony contempt matter, before the amendment, and proceeded more upon the terms of the particular order than on the requirement of a personal demand.

That decision, as well as *McComb* v. *Weaver* (*supra*), is opposed to *Fischer* v. *Raab* (56 How. Pr. 218), where it was held that a demand is not necessary in proceedings by order to show cause. This decision was eventually affirmed in 58 Howard's Practice, 221, and was unaffected by the reversal upon another point in 81 New York, 235. In *Park* v. *Park* (18 Hun, 466; affd., 80 N. Y. 156) contempt proceedings were sustained although there had been no precedent personal demand. In *People ex rel. Bellanca* v. *Moran* (235 App. Div. 317) the Appellate Division in the First Department dismissed a writ of habeas corpus and held that the order of the Supreme Court in Kings county committing the relator for contempt was within its jurisdiction. The record on appeal does not show any personal demand.

Thus, no personal demand *by* the party upon the debtor is necessary where the contempt proceeding is initiated by order to show cause and not by warrant of attachment without notice.

Motion granted, with ten dollars costs.